# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TAVON HOWARD, | |
| Plaintiff, | |
| v. | Civil Action No. 24-cv-2199-LKG |
| BERNICE MACE, | |
| Defendant. | |

## DEFENDANT BURNICE MACE, CRNP'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT

Defendant Burnice Mace, CRNP ("Mace"), through counsel, hereby submits this Memorandum of Law in support of her Motion to Dismiss or Alternatively for Summary Judgment.

## I.     STATEMENT OF FACTS

### A.     Plaintiff's Allegations

Tavon Howard ("Plaintiff"), an inmate currently incarcerated at Western Correctional Institution ("WCI"), initiated this action on July 26, 2024 by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff alleges that Mace oversees the Medication Assisted Treatment ("MAT") Program and expelled him from the Program on July 14, 2024 for assuming he was diverting medication. (*Id.* at 2). According to Plaintiff, he was receiving 24 mg of medication and it was decreased to 2 mg, which made him very sick. Plaintiff alleges he was never caught with any medication, paraphernalia, or contraband. (*Id.*). He further alleges he has been taking this medication his entire incarceration, which is three years, although he claims he was accepted into the MAT Program in November 2023. (*Id.* at 3). Plaintiff alleges this medication

is needed to help his body function normally but it is being used to punish inmates instead of rehabilitating them, which he claims is cruel and unusual punishment. (*Id.*).

On August 15, 2024, Plaintiff filed supplements to his Complaint. (Docs. 5 to 5-3). One of the supplements is a Department of Public Safety and Correctional Services ("DPSCS") Inmate Hearing Record in which Plaintiff was found guilty after an evidentiary hearing for attempting to divert the medication suboxone on July 10, 2024. (Doc. 5-2). On October 3, 2024, Plaintiff filed additional supplements to the Complaint. (Docs. 13, 13-1). One of the supplements is a letter dated September 3, 2024 from the Centurion Medical Team to Plaintiff in which he was informed that he would not be placed back in the MAT Program due to noncompliance with the program. (Doc. 13-1 at 1). The letter added that he was tapered off the medication due to diversion and abuse of the medication. (*Id.*).

**B.    Declaration of Burnice Mace, CRNP**

Burnice Mace is a Certified Registered Nurse Practitioner ("CRNP") licensed by the State of Maryland. (Ex. A, Mace Decl. ¶ 2). She was previously employed by YesCare Corp. as a CRNP at North Branch Correctional Institution ("NBCI") and WCI until July 31, 2024. (*Id.*). On August 1, 2024, Centurion became the contracted health care provider, and Mace is now employed in the same role with Centurion. (*Id.*).

The MAT Program is an addiction treatment program for patients who are addicted to narcotic drugs or opiates. (*Id.* ¶ 5). The MAT Program provides medication management with medications such as suboxone, which is a combination of buprenorphine and naloxone that works chemically to decrease the severity of withdrawal symptoms and reduce a patient's dependence on opioids in the long term. (*Id.*). However, there is a risk of misuse, dependence, and overdose with suboxone. (*Id.*). Suboxone is not used to punish inmates as Plaintiff claims. (*Id.*). It is not withheld

4867-8910-0031, v. 1

to inflict pain or to cause harm, but it is discontinued when a patient diverts it because like any opiate, suboxone has a high risk of diversion and raises associated safety and security concerns for prison officials. (*Id.*).

Although Plaintiff alleges Mace oversees the MAT Program, that is not correct. (*Id.* ¶ 6). She was not and is not in charge of the MAT Program. (*Id.*). During the time in question, Dr. Joel Buzy oversaw the MAT Program at WCI. (*Id.*). After Dr. Buzy left his employment, the CRNPs including Mace were asked to refill the medications for the MAT Program until another Site Medical Director was hired. (*Id.*). However, if a patient was diverting the medication, they were to taper and discontinue the medication, which Mace did in this case. (*Id.*).

Plaintiff was expelled from the MAT Program for diverting or attempting to divert medication on June 21, 2024 and July 10, 2024. (*Id.* ¶ 7). The Inmate Hearing Record Plaintiff filed with his Complaint shows the following. (*Id.*; citing Doc. 5-2). An evidentiary hearing was conducted on July 31, 2024[1] regarding Plaintiff attempting to divert suboxone on July 10, 2024. (Mace Decl. ¶ 7). The hearing included oral testimony and video footage and the hearing officer, Christopher Wedlock, made the following findings of fact. (*Id.*). After Plaintiff received his suboxone, LPN Hixenbaugh observed Plaintiff remove the suboxone from his mouth and place it in his hand. (*Id.*). Hixenbaugh instructed Plaintiff to show her what was in his hand and he refused to comply. (*Id.*). Plaintiff stood up from his chair, dropped the suboxone onto the floor, and then picked it up. (*Id.*). He walked into the toilet in the rec hall and flushed the suboxone. (*Id.*). This account was supported by testimony and video of the incident. (*Id.*). Officer Wedlock found that Plaintiff did attempt to possess the suboxone which he was supposed to ingest while remaining in

---

[1] The Inmate Hearing Report is dated July 14, 2024, but states Plaintiff appeared on July 31, 2024, and the Hearing Officer issued his decision on July 31, 2024. (*See* Doc. 5-2 at 3, 6).

the rec hall. (*Id.*). He found Plaintiff Guilty of violating Rules 111, 304, and 315. (*Id.*). Because Plaintiff refused to show LPN Hixenbaugh what was in his hand and refused to not go to the bathroom and flush the suboxone, he was also found Guilty of violating Rule 316. (*Id.*). Officer Wedlock did not find credible Plaintiff's testimony that he picked up a piece of tissue off the floor and flushed it and concluded that a reasonable person would find that extremely unlikely. (*Id.*).

According to Mace, Plaintiff was properly expelled from the MAT Program due to diversion and utter disregard for the rules of the program. (*Id.* ¶ 17). However, he was safely tapered off the medication. (*Id.*).

C.    **Plaintiff's Medical Records**

On March 12, 2024, Plaintiff transferred from Jessup Correctional Institution to WCI. (Mace Decl. ¶ 8). On March 13, 2024, Dr. Buzy noted that Plaintiff reported he was to only receive suboxone 8 mg tablets and not the additional suboxone 2 mg tablets. (*Id.*). The 2 mg tablets were discontinued. (*Id.*). On March 15, 2024, Dr. Buzy entered an administrative note. (*Id.* ¶ 9). He noted Plaintiff was recently transferred to WCI for continuation in the MAT suboxone program. (*Id.*). They discussed the rules of the program including that diversion or attempts would lead to discontinuation of suboxone. (*Id.*). Plaintiff agreed with the rules of the program and consented to treatment. (*Id.*). He currently had minor withdrawal symptoms. (*Id.*). Plaintiff reported his usual dose was 20 mg and he had been at 16 mg after transfer. (*Id.*). Dr. Buzy reviewed his chart and entered suboxone orders for 20 mg. (*Id.*).

On June 21, 2024, RN Brenda Reese entered an administrative note. (*Id.* ¶ 10). She noted that Plaintiff presented to the MAT medication pass and upon mouth check was discovered to have a piece of plastic wrap in his cheek. (*Id.*). He also had a carton of apple juice with him. (*Id.*). Plaintiff was advised to take the plastic wrap out of his mouth and he argued that he did not have

4

it. (*Id.*). He left the room and came back with a clear mouth. (*Id.*). Plaintiff drank the apple juice prior to receiving suboxone. (*Id.*). He was reminded that his efforts were considered diversion of medication. (*Id.*).

On June 23, 2024, Mace saw Plaintiff for chronic care. (*Id.* ¶ 11). At that time, he was assessed with opioid dependence, in remission, with a current dose of 20 mg suboxone per day. (*Id.*). He reported sweats and not feeling well in the evening hours, increased feelings of craving drugs, and obsessive thoughts about needing to get high. (*Id.*). Plaintiff had constipation related to suboxone use and Mace discussed adding Colace for constipation. (*Id.*). He also had a chronic history of hypertension, and Mace restarted his medication and ordered a blood pressure check at the next visit. (*Id.*). She continued the MAT Program and increased the suboxone dosage to 24 mg daily to curb cravings. (*Id.*). Plaintiff verbally consented to treatment and understood the rules of the program, including that diversion would lead to tapering of suboxone and an alternative treatment plan implemented. (*Id.*).

On July 10, 2024, RN Reese entered an administrative note. (*Id.* ¶ 12). She noted Plaintiff entered HU5 C Tier top rec hall for suboxone administration. (*Id.*). The proper process was followed for ID and mouth check prior to medication administration. (*Id.*). After receiving his suboxone, Plaintiff was observed by the LPN taking the medication out of his mouth and placing it in his left hand. (*Id.*). The officer observing med pass was made aware. (*Id.*). Eventually Plaintiff placed the medication into his left pocked into plastic wrap. (*Id.*). He asked to have his mouth checked and the LPN advised him to remain seated as she knew he had the medication in his pocket. (*Id.*). Plaintiff argued and asked to be dismissed. (*Id.*). The LPN asked Plaintiff to show her what he had in his pocket. (*Id.*). He refused and tried to place the item down his pants but it fell onto the floor at which time he stepped on it. (*Id.*). The custody officer was aware. (*Id.*). The

LPN instructed Plaintiff to give her the medication but he refused and said he was going to "flush it down the toilet." (*Id.*). The LPN advised him not to do that but he pulled away from her and went into the rec hall bathroom where the LPN observed him placing something in the toilet and flushing. (*Id.*). Plaintiff was advised of his medication diversion and that the provider would be informed. (*Id.*).

On July 11, 2024, RN Reese entered an administrative note. (*Id.* ¶ 13). She noted Plaintiff entered HU5 C Tier top rec hall for suboxone administration. (*Id.*). He was advised that he needed to sit with his hands under his legs or clasped together on his lap and that no effort for diversion is accepted and could result in discharge from the MAT Program. (*Id.*). Plaintiff laughed and stated, "I'm too quick." (*Id.*).

On July 13, 2024 Mace ordered to taper and discontinue the suboxone. (*Id.* ¶ 14). Her taper orders were for 8 mg on July 17-19, 4 mg on July 20-22, 2 mg on July 23-25, and then stop. (*Id.*). She entered this information into the note template in the Electronic Personal Health Record (EPHR), but the note did not generate. (*Id.*). Mace noted that Plaintiff openly admitted that he diverts the medication when he wants to get high for the day. (*Id.*). He then later snorts the dry powder. (*Id.*). Plaintiff was educated at the start of the program and with each visit that diversion will result in the medication being tapered off and removal from the program. (*Id.*).

On September 3, 2024, Plaintiff was sent a letter from the Centurion Medical Team. (*Id.* ¶ 15). The letter indicated that the medical department had received his sick call requesting addiction medication, but he was informed that he would not be placed back on the MAT program due to noncompliance. (*Id.*). He was tapered off the medication due to diversion and abuse of the medication. (*Id.*).

4867-8910-0031, v. 1

On September 6, 2024, Mace saw Plaintiff for chronic care/sick call. (*Id.* ¶ 16). He was unhappy with the decision to stop the suboxone medication, and they discussed revisiting this at his next chronic care visit. (*Id.*). Mace noted he had been enrolled in the MAT Program but was repeatedly found to be diverting medication and the medication was discontinued as a result. (*Id.*).

## II.    LEGAL ARGUMENT

### A.    Motions to Dismiss

As to a 12(b)(6) motion to dismiss, a plaintiff fails to state a claim when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). This requirement "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Supreme Court has held that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). However, the Fourth Circuit has "not read *Erickson* to undermine *Twombly's* requirement that a pleading contain more than labels and conclusions." *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying *Twombly* standard in dismissing pro se complaint); *accord Atherton v. Dist. of Columbia*

*Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint ... 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'") (quoting *Erickson*, 551 U.S. at 94 and *Iqbal*, 556 U.S. at 679).

**B.    Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate against a plaintiff who fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Failure to demonstrate a genuine issue for trial will result in summary judgment. *See Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 951 (4th Cir. 1995).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The Court may rely on only facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). "Unsupported speculation is not sufficient to defeat a summary judgment motion." *Id.* (citing *Ash v. United Parcel Serv.*, 800 F.2d 409, 411-12 (4th Cir. 1986)). "When

4867-8910-0031, v. 1

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**C.    Deliberate Indifference Claims Under 42 U.S.C. § 1983**

Federal claims by prisoners that they received constitutionally deficient medical care in violation of the Eighth Amendment are governed by the deliberate indifference standard. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* The "deliberate indifference" standard is made up of (1) an objective component requiring that the pain or condition be sufficiently serious; and (2) a subjective component requiring that the offending officials acted with a sufficiently culpable state of mind. *Id.* at 104-06.

The objective component is satisfied by a serious medical condition and the subjective component is satisfied by showing deliberate indifference by prison officials. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). "[A] 'serious ... medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). "Moreover, . . . in a case involving a claim of deliberate indifference to a medical need, the inmate must show a 'significant injury.'" *Vance v. Shearin*, No. ELH-14-272, 2015 WL 433666, at *15 (D. Md. Jan. 30, 2015) (unpublished) (quoting *Danser v. Stansberry*, 772 F.3d 340, 346 n. 8 (4th Cir. 2014)).

"To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than

acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. "An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference requires that a prison official "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A prison official is not deliberately indifferent if he did not actually draw the inference that the prisoner was exposed to a specific risk of harm. *Id.* at 844.

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson*, 145 F.3d at 166. In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

A prisoner's right to medical treatment consistent with the Eighth Amendment's prohibition against cruel and unusual punishment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis in original). Disagreements between an inmate and a physician over the inmate's proper medical care fall short of showing deliberate indifference. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *see also Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (holding

that differences in opinion between a prisoner and medical staff over what is necessary treatment are not sufficient to state a claim of deliberate indifference).

**D.    Plaintiff Fails to State a Claim Against Mace**

As an initial matter, Plaintiff's allegations of opioid addiction, treatment with suboxone, and getting "very sick" when the dose was decreased arguably fails to satisfy the pleading requirements of an objectively serious medical need. *See Iko*, 535 F.3d at 241; *Bedard v. LeBlanc*, No. 5:20-cv-161, 2024 WL 3527022, at *8 (D. Vt. Apr. 15, 2024) (Slip Copy) (collecting cases and explaining that "[c]ourts in this circuit have 'held that, in general, a failure to treat withdrawal symptoms that are of relatively short duration does not constitute a [constitutional] violation'"); *but see Brawner v. Scott Cty.*, 14 F. 4th 585, 598 (6th Cir. 2021) (holding that a jury could find that a prisoner who was taking suboxone for opioid addiction had an objectively serious medical need). In his Complaint, Plaintiff alleges only that he needs suboxone to help his body function normally and that decreasing the dose made him "very sick." (Doc. 1 at 2-3). These allegations are vague and fail to show that any withdrawal symptoms were of sufficient severity and length to qualify as objectively serious. Further, there are no allegations that Plaintiff had any "significant injury" after being tapered off the suboxone, and a significant injury is required for a deliberate indifference claim. *See Danser*, 772 F.3d at 346 n. 8; *Vance*, 2015 WL 433666 at *15. Based on these allegations, the Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.

But even if Plaintiff adequately pleaded an objectively serious medical need, he fails to satisfy the subjective element of an 8th Amendment deliberate indifference claim. Plaintiff alleges only that Mace expelled him from the MAT Program for assuming he was diverting medication. (Doc. 1 at 2). There are no allegations that Mace was subjectively aware that he was experiencing

any withdrawal symptoms or needed to continue the MAT Program but expelled him anyway. Mace could not be deliberately indifferent unless she subjectively knew of and disregarded an excessive risk to Plaintiff's health or safety. *See Farmer*, 511 U.S. at 837. 825, 834 (1994). And courts have "found that a plaintiff being removed from the MAT program for diverting medication did not rise to the level of deliberate indifference." *DiFraia v. Ransom*, No. 1:23-cv-01187, 2024 WL 3362274, at *3 (M.D. Pa. July 9, 2024) (Slip Copy), *appeal filed*, No 24-2673 (3d Cir. Sept. 10, 2024). In *DiFraia*, the court explained:

> At best, Plaintiff's complaint demonstrates his disagreement with being removed from the program and taken off the Suboxone. Though he may have wished to remain in the program and on Suboxone, his disagreement with the course of action that Defendants took based on the diversion of mediation on November 9, 2020, is *not enough to state a § 1983 claim*. *Sample v. Diecks*, 885 F.2d 1099, 1109 (3d Cir. 1989). This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. *Farmer*, 511 U.S. at 837; *Rouse*, 12 F.3d at 197. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison.

*Id.* (quoting *Hymer v. Kross*, No. 3:22-1531, 2022 WL 17978265, at *6 (M.D. Pa. Dec. 28, 2022)) (emphasis added).

As in *DiFraia*, Plaintiff's claim that Mace removed him from the MAT Program based on diversion of medication amounts to a disagreement with his treatment and is "not enough to state a § 1983 claim." *See id.* Although Plaintiff alleges that the medication is being used to punish inmates instead of rehabilitating them, this amounts to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" that "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *See Iqbal*, 556 U.S. at 678. There are no additional allegations supporting how this is done, and "mere conclusory statements do not suffice." *See id.*

Plaintiff's supplements to his Complaint show that he was in fact expelled from the MAT Program due to medication diversion, and the Court can consider these documents in ruling on Mace's motion to dismiss. (*See* Docs. 5-2, 13-1). While a motion to dismiss tests the sufficiency of a complaint, courts "also consider documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal citations omitted); *see also Togba v. Wing Stop/Sizzling Platter LLC*, No. JKB-23-01533, 2023 WL 8112901, at *1 (D. Md. Nov. 22, 2023) (Slip Copy) ("Thus, in laying out the facts of the case and in reviewing the Motion to Dismiss, the Court will consider the allegations in Togba's complaint, the documents attached to his complaint, and the documents comprising the supplement to the complaint.").

Plaintiff alleges that Mace wrongfully discharged him from the MAT Program for assuming he was diverting medication and that he "was never caught with any medication, paraphernalia, or contraband." (Doc. 1 at 2). The Inmate Hearing Record Plaintiff filed as a supplement to his Complaint proves that allegation is false. Based on witness testimony and review of video evidence, the hearing officer determined that Plaintiff "did attempt to possess the Suboxone which he was supposed to ingest while remaining in the rec hall." (Doc. 5-2 at 5). So while Plaintiff contends that suboxone is being used to punish inmates instead of rehabilitating them, there are no other allegations supporting this and his own supplements prove that is false. Accordingly, this Court should dismiss Plaintiff's Complaint.

## E.    Alternatively, Mace is Entitled to Summary Judgment

Even assuming, *arguendo*, that Plaintiff did state a claim sufficient to survive a Rule 12(b)(6) motion to dismiss, Mace is alternatively entitled to summary judgment because the

evidence shows that she was not deliberately indifferent for expelling Plaintiff from the MAT Program for diverting or attempting to divert his suboxone.

As explained above, other courts have found that removing an inmate from the MAT program for diverting medication did not rise to the level of deliberate indifference, particularly when there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff to inflict pain or harm. *See DiFraia*, 2024 WL 3362274 at *3. While Plaintiff makes the conclusory assertion that suboxone is used to punish inmates, the evidence refutes this. Mace attested that suboxone is not used to punish inmates and is not withheld to inflict pain or to cause harm. (Mace Decl. ¶ 5). However, it is discontinued when a patient diverts it because like any opiate, suboxone has a high risk of diversion and raises associated safety and security concerns for prison officials. (*Id.*). Here, as in *DiFraia*, Plaintiff's complaints "amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison." *Id.* It is well established that disagreements between an inmate and a physician over the inmate's proper medical care fall short of showing deliberate indifference. *Jackson*, 775 F.3d at 178; *Wright*, 766 F.2d at 849.

The Inmate Hearing Record refutes Plaintiff's allegation that he "was never caught with any medication, paraphernalia, or contraband." (Doc. 1 at 2; Doc. 5-2 at 5). Because Plaintiff's version of events is blatantly contradicted by the record so that no reasonable jury could believe it, this Court should not adopt that version of the facts for purposes of ruling on Mace's motion for summary judgment. *See Scott*, 550 U.S. at 380. The Court may only rely on facts supported in the record, not simply the assertions in Plaintiff's pleadings that suboxone is used to punish inmates and was improperly discontinued, to fulfill its "affirmative obligation ... to prevent 'factually

14

unsupported claims and defenses' from proceeding to trial." *Felty*, 818 F.2d at 1128. There is no genuine issue of material fact for trial, and Mace should be granted summary judgment.

### III.  CONCLUSION

For the reasons set forth above, Burnice Mace, CRNP requests that Plaintiff's suit against her be dismissed for failure to state a claim or, since no dispute of material fact exists, that summary judgment be entered in her favor.

MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.

By: */s/ Megan T. Mantzavinos*
    Megan T. Mantzavinos
    Bar Number: 16416
    mmantzavinos@moodklaw.com
    600 Baltimore Avenue, #305
    Towson, Maryland 21204
    (410) 339-6880
    (410) 339-6881 (Fax)
    *Attorney for Defendant Burnice Mace, CRNP*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of November 2024, a copy of the foregoing document was electronically transmitted to this court and mailed first class, postage pre-paid to:

Tavon Howard, #495946/ #2682376
Western Correctional Institution
13800 McMullen Hwy., SW
Cumberland, MD 21502
*Pro Se Plaintiff*

    */s/ Megan T. Mantzavinos*
    Megan T. Mantzavinos

4867-8910-0031, v. 1

16