## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TAVON HOWARD,                  )
                               )
        Plaintiff,             )
                               )        Civil Action No.: LKG-24-2199
v.                             )
                               )        Dated: June 27, 2025
BURNICE MACE,[1]               )
                               )
        Defendant.             )
                               )
                               )

## MEMORANDUM OPINION

Self-represented Plaintiff Tavon Howard brings this civil rights action against Burnice Mace. ECF No. 1. Howard claims Defendant Mace was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. On November 22, 2024, Defendant Mace filed a Motion to Dismiss or for Summary Judgment. ECF No. 15. Howard filed an unsigned and unverified opposition. ECF No. 17. The motion is ripe for review and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).

### I.     BACKGROUND

#### A. Plaintiff's Claims

Howard brings this suit alleging that he was improperly removed from the "MAT Program." *See* ECF No. 1 at 2. Howard alleges that Burnice Mace is the head of the MAT Program at Western Correctional Institution ("WCI"). *Id.* On July 14, 2024, she expelled Howard from the program "for assuming [he] was diverting medication." *Id.* Howard states that he was receiving 25 mg and was instantly decreased to 2 mg which made him sick. *Id.* He denies being caught in possession of medication, paraphernalia, or contraband. *Id.* Howard explains that he had been taking the medication for the past three years and was accepted into the MAT program in November of 2023. *Id.* at 3. He asserts that the medication is needed to help his body function and the medication is used to punish inmates instead of rehabilitating them. *Id.*

---

[1] The Clerk shall amend the docket to reflect the correct spelling of Defendant's name.

Howard filed a supplement to the complaint including a copy of a receipt of an administrative remedy procedure ("ARP") he filed regarding his removal from the MAT program. ECF No. 5-1. He also filed a copy of an Inmate Hearing Record concerning a Notice of Inmate Rule Violation ("NOIRV"), dated July 14, 2024, reporting an alleged incident on July 10, 2024. ECF No. 5-2. The facts reported by LPN Peggy Hixenbaugh, were that she gave Howard a "watch/take" prescription medication, Buprenorphine, to be placed under his tongue. She saw Howard take the medication out of his mouth and place it in his left hand. *Id.* at 3. He was instructed to show the nurse his hand but he refused. *Id.* The Buprenorphine dropped to the floor and Howard covered it with his foot, refused to give it to the nurse, and said he was going to flush it down the toilet. *Id.* As a result of that exchange, Howard was charged with a number of inmate rule violations. *Id.* An officer testified regarding the events and video was reviewed by the hearing officer. *Id.* at 3-4. Ultimately, the hearing officer found that after receiving "watch/take" suboxone, LPN Hixenbaugh saw him remove the suboxone from his mouth and place it in his hand. Hixenbaugh instructed Howard to show her what was in his hand but he refuse to comply. He then stood up and dropped the suboxone onto the floor and then picked it up. He walked to the toilet in the recreation hall and flushed the suboxone. *Id.* at 5. The hearing officer found that Howard attempted to possess the suboxone which was supposed to be ingested while remaining in the recreation hall and found Howard guilty of a number of rule violations. *Id.*

Howard also provided a "log sheet" that explains that after the above incident, on July 12, 2024, Mace began to remove him from the program. He was placed on restrictive housing on July 14. He submitted multiple sick calls for addiction medication between July 14 and 26, 2024. On July 26, 2024, he received his last dose and was "kicked out of MAT Program." *Id.* On July 31, 2024, he received twenty days of segregation as a result of the infraction. *Id.* He moved from restrictive housing the next day. On August 4, 2024, he requested legal books and the following day received legal mail. On August 8, 2024, he was seen by mental health for drug addition problems and MAT program; he was advised that the jail would be hiring an addiction counsellor the following week. On August 9 and 10, 2024, he wrote sick calls regarding addiction medications. *Id.*

In a second supplement to the complaint, Howard provided a copy of correspondence form Centurion Medical dated September 3, 2024, advising that he would not be placed back

into the MAT program because had had been found non-compliant with the program. ECF No. 13-1 at 1. The letter noted that he had been tapered off the medication due to his abuse of the medication. *Id.* The balance of the exhibit is Howard's log regarding his efforts to access mental health services, be reinstated into the MAP program, challenge his removal from the program and resultant disciplinary ticket, as well as his efforts to hire counsel. *Id.* at 3-10. Howard also provided copies of sick call slips and a Westcare Drug Assessment Consent form. ECF No. 14-1.

b. <u>Defendant's Response</u>

Certified Registered Nurse Practitioner ("CRNP") Burnice Mace explains that she was previously employed by YesCare Corp. as a CRNP at North Branch Correctional Institution and WCI until July 31, 2024. ECF No. 15-2, ¶ 2 (Mace Decl.). On August 1, 2024, Centurion became the contracted health care provider, and Mace continued as a CRNP with Centurion. *Id.* Mace did not oversee and was not in charge of the Medication Assistance Treatment ("MAT") Program as Howard alleges. *Id.* ¶ 6. During the relevant time period, Dr. Joel Buzy oversaw the MAT Program. *Id.* After Dr. Buzy left his employment, the CRNPs, including Mace, were tasked with refilling the MAT program medications until a new Site Medical Director was hired. *Id.* If a patient was diverting the medication, however, the CNRPs were to taper and discontinue the medication: Mace did so in Howard's case. *Id.*

Mace explains that the MAT Program is an addiction treatment program for inmates addicted to narcotics or opiates. ECF No. 15-2, ¶ 5. The MAT Program provides medication management, including the use of suboxone, which is a combination of buprenorphine and naloxone that works to decrease the severity of withdrawal symptoms and reduce the patient's opioid dependence. *Id.* The use of suboxone, however, carries its own risk of misuse, dependence, and overdose. *Id.* Mace denies that suboxone is used to punish inmates as Howard claims or that it is withheld from inmates to inflict pain or to cause harm. *Id.* If a patient diverts suboxone the medication is discontinued, because, like other opiates, suboxone has a high risk of diversion which raises safety and security concerns for prison staff. *Id.*

On March 12, 2024, Howard was transferred from Jessup Correctional Institution to WCI. ECF No. 15-2, ¶ 8. His medical records demonstrate that on March 13, 2024, Dr. Buzy noted Howard reported he was to only receive suboxone 8 mg tablets and not the additional suboxone 2 mg tablets. ECF No. 15-3 at 19. As such, the 2 mg tablets were discontinued. *Id.*

3

On March 15, 2024, Dr. Buzy entered an administrative note that Howard was recently transferred to WCI to continue in the MAT suboxone program. ECF No. 15-3 at 17-18. They discussed the rules of the program, including that diversion or attempts to divert medication would lead to discontinuation of suboxone. *Id*. Howard agreed to the rules of the program and consented to treatment. *Id*. At that time he reported having minor withdrawal symptoms. *Id*. He explained that his usual dose was 20 mg and he was on 16 mg after transfer. *Id*. Dr. Buzy reviewed Howard's chart and entered an order that Howard receive 20 mg suboxone. *Id*.

An administrative note was entered on June 21, 2024, by RN Brenda Reese that Howard came to the MAT medication pass and was discovered to have a piece of plastic wrap in his cheek. ECF No. 15-3 at 10. Howard was directed to take the plastic wrap out of his mouth but he argued that he did not have it. *Id*. He left and came back with a clear mouth and drank apple juice before receiving his suboxone. *Id*. He was advised that his conduct was considered diversion of medication. *Id*.

On June 23, 2024, Mace evaluated Howard for chronic care. ECF No. 15-3 at 6-9. He was assessed with opioid dependence, in remission, and had a current dose of 20 mg suboxone per day. *Id*. He reported that he had sweats, did not feel well in the evening, had an increase in craving drugs, and suffered obsessive thoughts about needing to get high. *Id*. He also reported constipation related to suboxone use and Mace discussed taking Colace with Howard. *Id*. He also had a history of hypertension, and Mace restarted his medication and ordered a blood pressure check at the next visit. *Id*. She continued Howard in the MAT Program and increased the suboxone dosage to 24 mg daily in order to curb his cravings. *Id*. Howard verbally consented to treatment and indicated he understood the rules of the program, including that diversion would lead to tapering of suboxone and an alternative treatment plan being implemented. *Id*.

An administrative note was entered on July 10, 2024, by RN Reese. She reported that on that date Howard presented for suboxone administration and his identification and mouth were checked prior to medication administration. ECF No. 15-3 at 5. After receiving his suboxone, the LPN observed Howard take the medication from his mouth and place it in his left hand. *Id*. The officer observing the medication pass was made aware of the situation. Howard put the medication into plastic wrap in his left pocket. *Id*. He then asked to have his mouth checked but the LPN directed he remain seated. Howard argued and asked to be dismissed. *Id*. The LPN asked Howard to show her what was in his pocket but he refused and tried to place the item

down his pants. The item fell to the floor and Howard stepped on it. *Id*. The LPN directed Howard to give her the medication but he refused and said he was going to "flush it down the toilet." *Id*. The nurse directed him not to do so but he pulled away from her, went into the recreation hall bathroom, and the LPN saw him place something in the toilet and flush it. *Id*. Howard was advised that this was considered medication diversion and the provider would be notified. *Id*. This incident resulted in the disciplinary hearing discussed *supra*. *See also* ECF No. 15-2, ¶ 7 (citing ECF No. 5-2).

On July 11, 2024, RN Reese entered an administrative note. That day Howard entered the area for suboxone administration. ECF No. 15-3 at 4. He was advised that he needed to sit with his hands under his legs or clasped together on his lap and that no effort for diversion would be accepted and could result in his discharge from the MAT Program. *Id*. Howard responded by laughing and stating, "I'm too quick." *Id*.

Howard was expelled from the MAT Program for diverting or attempting to divert medication on June 21, 2024, and July 10, 2024. ECF No. 15-2, ¶ 7.

On July 13, 2024, Mace ordered Howard's suboxone to be tapered and discontinued. ECF No. 15-2, ¶ 14. Her orders directed Howard receive 8 mg on July 17-19, 4 mg on July 20-22, 2 mg on July 23-25, and then be stopped. *Id*. Mace entered this information into the note template in the Electronic Personal Health Record, but the note did not generate. *Id*. Mace also noted that Howard admitted he diverts the medication when he wants to get high for the day and later snorts the dry powder. *Id*. Howard was educated when he started the MAT program and at each visit that diversion would result in the medication being tapered off and he would be removed from the program. *Id*.

On September 3, 2024, Centurion Medical Team sent Howard a letter in response to his sick call requesting addiction medication. ECF No 15-5 at 20. He was advised that he would not be placed back on the MAT program because of his noncompliance. *Id*.

On September 6, 2024, Mace evaluated Howard for chronic care/sick call. ECF No. 15-5 at 11-15. He expressed his dissatisfaction with the decision to stop the suboxone medication, and they discussed revisiting his participation at his next chronic care visit. *Id*. Mace noted Howard had been enrolled in the MAT Program but was repeatedly found to be diverting medication and as a result the medication was discontinued. *Id*.

Mace explains that Howard was properly expelled from the MAT Program because he diverted medication and disregarded program rules. ECF No. 15-2, ¶ 17. Mace avers that contrary to Howard's allegations he was safely tapered off the medication. *Id.*

## II.     STANDARDS OF REVIEW

### a.   Federal Rule 12(b)(6)

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v.*

*Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

    b. <u>Conversion</u>

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b). When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court notified Howard that he had the right to respond to Defendant's Motion, that the Motion could be construed as a motion for summary judgment, and that if he did not file a timely and adequate response, the Court could rule in Defendant's favor. ECF No. 16. Moreover, Defendant's Motion, which identifies summary judgment as possible relief, provided sufficient notice for Howard to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). Howard opposed Defendant's Motion. Thus, the Court is satisfied that Howard has been advised that Defendant's Motion could be treated as a motion for summary judgment and that he has been given a reasonable opportunity to present materials in response to the Motion. The Court will resolve the Motion under Rule 56 if appropriate.

    c. <u>Federal Rule 56</u>

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III.    Discussion

Defendant asserts that the Complaint should be dismissed against her because Howard fails to state a claim or, alternatively, she is entitled to summary judgment because Howard has failed to demonstrate that she was deliberately indifferent to his serious medical need. ECF No. 15-1 at 2.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511

U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Assuming, without deciding, that Howard's claim regarding the discontinuation of suboxone to treat his opioid addiction constitutes a serious medical need, he nevertheless has failed to demonstrate that Defendant was deliberately indifferent to that need. Howard fails to allege, much less demonstrate, that Mace was aware that Howard suffered any withdrawal symptoms during or after his tapering from suboxone or that she was aware that he had a medical necessity to continue in the MAT Program but removed him anyway. Defendant cannot be deliberately indifferent unless she subjectively knew of and disregarded an excessive risk to Howard's health or safety. *See Farmer*, 511 U.S. at 837. 825, 834 (1994); *see also DiFraia v. Ransom*, No. 1:23-cv-01187, 2024 WL 3362274, at *3 (M.D. Pa. July 9, 2024) (holding inmates

9

removed from a MAT program for diverting medication did not rise to the level of deliberate indifference).

Howard baldly claims that suboxone is used to punish inmates and Defendant avers that is not the case. Howard has provided no evidence to support his claim. Moreover, Defendant explains that like any other opiate, suboxone has a risk of diversion which creates security and safety concerns within an institutional setting. Howard agreed to the terms for participation in the MAT Program, which included that he would not divert his medication. On two occasions Howard was found attempting to divert his medication: on the second, he was found guilty of an inmate rule violation. His failure to comply with the watch/take protocol regarding his receipt of suboxone made it necessary that he be removed from the program. Additionally, Howard has failed to counter Mace's declaration that his suboxone was properly tapered. His protestations to the contrary "amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison." *Jackson*, 775, F.3d at 178. Such disagreements, however, between an inmate and their medical provider over the proper course of treatment fall short of showing deliberate indifference. *Jackson*, 775 F.3d at 178; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Defendant Mace is entitled to summary judgement.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or for Summary Judgment (ECF No. 15) will be granted. A separate Order follows.

6/27/25
_____
Date

_____
LYDIA K. GRIGGSBY
United States District Judge

10